25-1423-cv
*State Farm v. Ricciardi*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**<u>SUMMARY ORDER</u>**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of May, two thousand twenty-six.

Present:

> WILLIAM J. NARDINI,
> EUNICE C. LEE,
> BETH ROBINSON,
> *Circuit Judges*.

---

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

*Plaintiff-Appellee*,

v.                                                            25-1423-(L), 25-1427-(Con)

DANIEL RICCIARDI, MARGARET RICCIARDI,

*Defendants-Appellants*.

---

| | |
|---|---|
| For State Farm Mutual Insurance Company: | M. PAUL GORFINKEL, Rivkin Radler LLP, Uniondale, NY |
| For Daniel Ricciardi: | KENNETH J. GORMAN, New York, NY |
| For Margaret Ricciardi: | Elise Langsam, Langsam Law LLP, New York, NY |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Joseph A. Marutollo, *Magistrate Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendants-Appellants Daniel and Margaret Ricciardi appeal from a judgment of the United States District Court for the Eastern District of New York, entered on May 13, 2025, in favor of Plaintiff-Appellee State Farm Mutual Insurance Company ("State Farm"). In this insurance coverage dispute, State Farm sought and obtained a declaratory judgment that it does not have a duty to defend and indemnify Daniel Ricciardi in a suit brought against him by his wife Margaret.

State Farm issued Daniel an auto insurance policy on his 2023 BMW X5 that was effective from March 23, 2023, to September 23, 2023 (the "Original Policy"). This Policy disclaimed Supplemental Spousal Liability Insurance ("SSL insurance"), that is, coverage for bodily injury to the insured's spouse where the spouse's recovery turns on the culpable conduct of the insured. At the time the Original Policy was issued, New York Insurance Law Section 3420(g) provided that auto insurance policies, as a default, were not to include SSL insurance, but that policyholders could purchase this coverage upon written request to their insurer. N.Y. Ins. Law § 3420(g), (g)(1) (2020). However, by a law enacted in 2022 and amended in March 2023, New York amended Section 3420(g) to require SSL insurance as a default for policies issued, renewed or modified on or after August 1, 2023. *See* 2022 N.Y. Sess. Laws Ch. 735 (A. 1029) (McKinney's); 2023 N.Y. Sess. Laws Ch. 108 § 2 (S. 833) (McKinney's); *see also* N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 11, § 60-1.6 (effective June 20, 2023). The revised statute provided that "[e]very insurer . . . shall provide . . . [SSL insurance coverage] unless the

2

insured elects, in writing and in such form as the superintendent determines, to decline and refuse such coverage in his or her policy." N.Y. Ins. Law § 3420(g)(2)(A) (2023). In addition, "[u]pon issuance, renewal or amendment of a motor vehicle liability policy . . . the insurer [was to] notify the insured, in writing, that [their] policy shall include [SSL] insurance unless the insured declines and refuses such insurance, in writing." *Id.* § 3420(g)(2)(B). This notice was to "be contained on the front of the premium notice in boldface type and include a concise statement that [SSL insurance] coverage is provided unless declined by the insured, an explanation of such coverage, and the insurer's premium for such coverage." *Id.* However, under the amendment's implementing regulation, "[a]n insurer [was] not . . . required to obtain a written declination at each renewal or amendment of the policy if a named insured previously submitted a written declination of SSL insurance." 11 NYCRR § 60-1.6(a)(3).

On June 26, 2023, while the Original Policy was still in effect, Daniel signed a Supplemental Spousal Liability Insurance Declination form that State Farm sent him (the "June 26, 2023 Declination"). This Declination form described SSL insurance, noted that the additional monthly premium for this coverage would be "$15.6," and stated (prematurely) that New York mandated SSL insurance in auto policies unless the insured opted out in writing. App'x at 55. Later, after totaling his 2023 BMW X5, Daniel obtained an amended policy from State Farm that insured his 2024 BMW X5 from September 20, 2023, to March 23, 2024 (the "Amended Policy"). This Policy again did not include SSL insurance, but did contain a disclaimer that described SSL insurance, noted that New York law required this coverage unless the insured opted out, and informed Daniel that his policy lacked such coverage because he had previously declined it. It did not, however, list the premium for SSL insurance.

On April 29, 2024, Margaret Ricciardi filed a lawsuit against Daniel in New York Supreme

3

Court, Kings County, alleging that Daniel had hit her with his 2024 BMW, causing severe injuries. Daniel asked State Farm to defend and indemnify him in Margaret's suit pursuant to the Amended Policy. State Farm retained counsel for Daniel, but reserved its rights to deny coverage. State Farm then initiated the present action, seeking a declaratory judgment that it had no duty to defend or indemnify Daniel. After the parties consented to magistrate judge jurisdiction, Daniel and Margaret moved to dismiss the action, while State Farm filed a cross-motion for judgment on the pleadings. On May 12, 2025, Magistrate Judge Joseph A. Marutollo issued an order granting judgment for State Farm and denying Daniel's and Margaret's motions. The court held that Daniel opted out of SSL insurance through the June 26, 2023 Declination, and that this written waiver validly disclaimed coverage for purposes of the Amended Policy. The court further concluded, in the face of Daniel's argument to the contrary, that State Farm's failure to list the premium for SSL insurance in the Amended Policy did not render ineffective the June 26, 2023 Declination.

On appeal, Daniel and Margaret seek reversal of the district court's judgment, arguing that the June 26, 2023 Declination was not an effective waiver of Daniel's right to mandatory SSL insurance under the post-August 1, 2023, version of Section 3420(g), and that the Amended Policy should be reformed to include SSL insurance due to its failure to list the premium for this coverage, as was required by the post-August 1, 2023, version of Section 3420(g).[1]

We review *de novo* the grant of a motion for summary judgment on the pleadings, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in the plaintiffs' favor. *Jaffer v. Hirji*, 887 F.3d. 111, 114 (2d Cir. 2018).[2]

---

[1] Because Margaret largely adopts the arguments made by Daniel, this order focuses on the arguments made by Daniel.

[2] Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

4

### I.     June 26, 2023 Declination

We begin with the June 26, 2023 Declination.  The Declination was a valid declination of SSL insurance under the statute.  The declination form Daniel received and signed tracked the language of the New York Department of Finance model declination form that the Ricciardis themselves say applied at the time.  It explained what SSL insurance is, stated that under New York law SSL insurance was included unless he declined the insurance in writing, identified the additional premium that would be associated with the SSL coverage if he did not decline it, and recommended that he consult with his insurance company representative if he was unsure whether to decline the coverage.  And it expressly referenced the policy number of the Original Policy.  We see nothing in the statute that indicates that a declination of the mandatory SSL coverage under the post-August 1, 2023, law is invalid if executed upon sufficient notice prior to that date.  And the New York regulation implementing the August 1, 2023, update to Section 3420(g) expressly provided that a prior written declination of SSL insurance would remain effective upon renewal or amendment of the underlying policy.  *See* 11 NYCRR § 60-1.6(a)(3).  Thus, Daniel's June 2023 Declination of the SSL was an effective declination under the Amended Policy.

### II.     Amended Policy

We turn next to Daniel's argument that SSL insurance should nonetheless be imputed into the Amended Policy due to the Policy's failure to specify the premium for this coverage.

As a preliminary matter, the Amended Policy was subject to notice requirements in the post-August 1, 2023, version of Section 3420(g).  This amendment stated that "[u]pon *issuance, renewal or amendment* of a motor vehicle liability policy . . . the insurer shall notify the insured, in writing, that [their] policy shall include [SSL insurance] unless the insured declines and refuses such insurance, in writing."  N.Y. Ins. Law § 3420(g)(2)(B) (2023) (emphasis added).  As an "amendment of a motor vehicle liability policy" entered into after August 1, 2023, the Amended

5

Policy was subject to this requirement. *Id.* Both parties agree with this conclusion, as do we.[3]

Applying the post-August 1, 2023, version of Section 3420(g), the Amended Policy did not provide complete notice about SSL insurance. Though the Policy did note that SSL insurance was mandatory unless declined by the insured and explained the nature of this coverage, it did not list the associated premium. This omission rendered the Policy noncompliant with the operative version of Section 3420(g). State Farm concedes as much. However, State Farm contends that the failure to list the premium for SSL insurance in the Amended Policy was immaterial because the June 26, 2023 Declination contained this information. But the post-August 1, 2023, version of Section 3420(g) provided that "the insurer shall notify the insured" about SSL insurance "[u]pon issuance, renewal or amendment of a motor vehicle liability policy" and that "[s]uch notification shall be contained on the front of the premium notice in boldface type and include . . . the insurer's premium for such coverage." N.Y. Ins. Law § 3420(g)(2)(B) (2023). These detailed requirements are not satisfied by pre-renewal notice through alternative means. Instead, they demand that notice be provided "upon" policy renewal and "on the front of the premium notice." State Farm did not do so.

The question thus becomes one of remedy. Under New York law, where the terms of an insurance policy conflict with or are "less generous to the insured" than required by New York statutes and accompanying insurance regulations, such terms are "unenforceable and superseded by the regulation." *Dingle v. Prudential Prop. & Cas. Ins. Co.*, 85 N.Y.2d 657, 660 (1995). But where the regulatory violation is a failure to provide required notice, the remedy is less clear. We predict that on these facts the New York Court of Appeals would not endorse equitable reformation

---

[3] The district court improperly concluded that the pre-August 1, 2023, version of Section 3420(g) applied to the Amended Policy.

6

of the Amended Policy to include SSL coverage that Daniel expressly declined, and for which he did not pay a premium, in order to remedy State Farm's failure to strictly comply with all of the requirements of the SSL notice in connection with the Amended Policy. Here, the only information missing from the notice accompanying the September 2023 amended policy—the SSL premium—was listed in the declination form Daniel signed in June 2023.

Daniel has not pointed to any provision of Section 3420(g) that permits reformation of an insurance policy as a remedy for an insurer's failure to strictly adhere to the SSL statute's notice requirements after an insured has declined SSL coverage following substantially compliant notice. *Cf. Loomis v. ACE Am. Ins. Co.*, 91 F.4th 565, 573 (2d Cir. 2024) (noting that insurance statutes did not provide for reformation as a remedy for failure to provide notice of optional coverage). Nor has he attempted to show that the Amended Policy was the product of fraud or mistake, thereby rendering equitable reformation under New York law more generally unavailable. *Id.* Moreover, Daniel never paid SSL insurance premiums, meaning that he obtained the services that he paid for and would receive a windfall if SSL insurance were *ex-post* read into his policy. Accordingly, adding SSL insurance to the Amended Policy is not a proper remedy for State Farm's failure to adhere to Section 3420(g)'s requirement that the SSL insurance premium be listed on the notice accompanying the Amended Policy.

We have considered Daniel and Margaret Ricciardi's remaining arguments and find them unpersuasive. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

7